**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| TANGENT TECHNOLOGIES LLC | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:23-cv-00261-WCG |
| | ) | |
| RPI INC | ) | Hon. William C. Griesbach |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**<u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>**

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................... 1

II. BACKGROUND ...................................................................................................... 2

III. RELEVANT LEGAL STANDARDS ...................................................................... 3

    A. Motion to Dismiss ......................................................................................... 3

    B. Patent Eligibility Under 35 U.S.C. § 101 ...................................................... 4

    C. Validity of Design Patents ............................................................................. 5

    D. Infringement of Design Patents .................................................................... 6

IV. ARGUMENT ............................................................................................................ 7

    A. The '350 Patent Is Directed To Patent Eligible Subject Matter ................... 7

        1. The '350 Patent Claims Are Physical, Not Abstract ......................... 7

        2. *Alice* Step 1: The '350 Patent Claims Are Not Directed to
Abstract Ideas .................................................................................... 8

        3. *Alice* Step 2: The '350 Patent Claims Address a Particular
Implementation and Include Inventive Concepts ................................ 13

        4. RPI's § 101 Challenge to the '350 Patent is Premature ................... 18

        5. The '350 Patent Claims Are Proper for a Utility Patent .................... 20

    B. Tangent's Design Patent Claims (Counts II and III) Should Not be
Dismissed for Invalidity ............................................................................... 21

        1. RPI's Invalidity Challenge is Premature ......................................... 21

        2. RPI Has Not Established Invalidity by Clear and
Convincing Evidence ......................................................................... 23

    C. Tangent's Design Patent Claims (Counts II and III) Satisfy the
Pleading Standard for Infringement .............................................................. 25

        1. Tangent Sufficiently Alleged Design Patent Infringement ................ 25

        2. RPI's Non-Infringement Arguments Improperly Focus on
the Merits ........................................................................................... 26

        3. It is Premature to Decide Infringement ........................................... 27

V. CONCLUSION ....................................................................................................... 30

i

# TABLE OF AUTHORITIES

**CASES**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018) ................................................................. 3

*Abbott Labs. v. Dey, L.P.*,
  287 F.3d 1097 (Fed. Cir. 2002) ................................................................. 25

*Alice Corp. PTY. LTD. v. CLS Bank Int'l*,
  134 S.Ct. 2347 (2014) ..................................................................... passim

*American Fabrics Co. v. Richmond Lace Works*,
  24 F.2d 365 (2d Cir. 1928) ....................................................................... 24

*Apple Inc. v. Motorola, Inc.*,
  757 F.3d 1286 (Fed. Cir. 2014) ................................................................. 25

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................. 18

*BanCorp Servs., LLC v. Sun Life Assurance Co. of Canada*,
  687 F.3d 1266 (Fed. Cir. 2012) ................................................................. 18

*BASCOM Global Internet Servs. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016) ............................................................. 4, 14

*Baxter Int'l, Inc. v. CareFusion Corp.*,
  No. 1:15-cv-09986, 2016 WL 2770787 (N.D. Ill. May. 13, 2016) ................... passim

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................. 3, 18

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) ................................................................... 4

*Berkheimer v. HP Inc.*,
  890 F.3d 1369 (Fed. Cir. 2018) ................................................................. 18

*Bilski v. Kappos*,
  561 U.S. 593 (2010) .................................................................................. 16

*Biotec Biologische Naturverpackungen GmbH v. Biocorp, Inc.*,
  249 F.3d 1341 (Fed. Cir. 2001) ................................................................. 24

*Brownmark Films, LLC v. Comedy Partners*,
  682 F.3d 687 (7th Cir. 2012) ................................................................. 4, 21

ii

*Cable TV Fund 14-A, Ltd. v. City of Naperville,*
No. 96-C-5962, 1997 WL 280692 (N.D. Ill. May 21, 1997)................................................. 21

*CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG,*
224 F.3d 1308 (Fed. Cir. 2000)........................................................................................ 19

*Canrig Drilling Tech., Ltd. v. Trinidad Drilling L.P.,*
No. H-15-0656, 2015 WL 5458576 (S.D. Tex. Sept. 17, 2015)......................................... 10

*Card Verification Solutions, LLC v. Citigroup Inc.,*
No. 13-cv- 6339, 2014 WL 4922524 (N.D. Ill. Sept. 29, 2014)........................................... 5

*Celgene Corp. v. Lotus Pharm. Co.,*
No. 17-cv-6842, 2018 WL 6584888 (D.N.J. Dec. 14, 2018)............................................... 19

*Cellspin Soft, Inc. v. Fitbit, Inc.,*
927 F.3d 1306 (Fed. Cir. 2019).......................................................................................... 4

*Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.,*
942 F.3d 1119 (Fed. Cir. 2019).......................................................................................... 6

*Crocs, Inc. v. Int'l Trade Comm'n,*
598 F.3d 1294 (Fed. Cir. 2010)........................................................................................ 28

*Curver Luxembourg, SARL v. Home Expressions Inc.,*
938 F.3d 1334 (Fed. Cir. 2019)........................................................................................ 23

*Cybersource Corp. v. Retail Decisions, Inc.,*
654 F.3d 1366 (Fed. Cir. 2011).......................................................................................... 8

*DDR Holdings LLC v. Hotels.com,*
773 F.3d 1245 (Fed. Cir. 2014)........................................................................................ 16

*Design Ideas, Ltd. v. Lowe's Home Centers*, LLC,
No. 3-20-cv-03204, 2021 WL 5611319 (C.D. Ill. Nov. 30, 2021) ................................... 6, 27

*Design Ideas, Ltd. v. Target Corp.,*
No. 3-20-cv-03231, 2021 WL 6058698 (C.D. Ill. Dec. 21, 2021) ................................... 6, 29

*Deston Therpaeutics LLC v. Trigen Labs., Inc.,*
723 F.Supp.2d 665 (D. Del., 2010).................................................................................. 20

*Diamond v. Diehr,*
450 U.S. 175 (1981)......................................................................................................... 10

*EcoServices, LLC v. Certified Aviation Services, LLC,*
830 F. App'x 634 (Fed. Cir. 2020) ................................................................................... 10

iii

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008).................................................................... 6, 27, 28

*Elmer v. ICC Fabricating, Inc.*,
67 F.3d 1571 (Fed. Cir. 1995)....................................................................... 27, 28

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016)............................................................................ 15

*Erickson v. Pardus*,
551 U.S. 89 (2007)................................................................................................ 30

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
796 F.3d 1312 (Fed. Cir. 2015)............................................................................ 30

*Five Star Gourmet Foods, Inc. v. Ready Pac Foods, Inc.*,
No. 5:18-cv-2436, 2019 WL 1260634 (C.D. Cal. Mar. 18, 2019) ........... 7, 26, 27, 30

*Fujitsu Ltd. v. Belkin Int'l, Inc.*,
782 F.Supp.2d 868 (N.D. Cal. 2011) ................................................................... 20

*Gibson v. City of Chicago*,
910 F.2d 1510 (7th Cir. 1990) ................................................................. 4, 21, 26

*Hall v. Bed Bath & Beyond, Inc.*,
705 F.3d 1357 (Fed. Cir. 2013)................................................................. 25, 26, 28

*High Point Design LLC v. Buyer's Direct, Inc.*,
621 F. App'x 632 (Fed. Cir. 2015) ......................................................................... 5

*H-W Technology, L.C. v. Apple Inc.*,
No. 3-11-cv-00651, 2012 WL 959316 (N.D. Tx. Feb 23, 2012)............................. 6

*Hyson USA, Inc. v. Hyson 2U, Ltd.*,
821 F.3d 935 (7th Cir. 2016) ....................................................................... 5, 22

*ID Image Sensing LLC v. OmniVision Tech., Inc.*,
No. 1-20-cv-00136, 2020 WL 6888270 (D. Del. Nov. 24, 2020) .................... 10, 12

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
695 F.Supp.2d 680 (S.D. Ohio 2010) ............................................................. 20, 22

*In re Bilski*,
545 F.3d 943 (Fed.Cir.2008).............................................................................. 16

*In re Maloney*,
411 F.2d 1321 (CCPA 1969) ......................................................................... 11, 17

iv

*In re TLI Commc'ns LLC Patent Litig.*,
   823 F.3d 607 (Fed. Cir. 2016).................................................................. 9

*Lanard Toys Ltd. v. Dolgencorp LLC*,
   958 F.3d 1337 (Fed. Cir. 2020)............................................................... 6

*Lee v. Dayton-Hudson Corp.*,
   838 F.2d 1186 (Fed. Cir. 1988)............................................................. 28

*Liqui-Box Corp. v. Scholle IPN Corp.*,
   449 F.Supp.3d 790 (N.D. Ill. 2020) ...................................................... 27

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995).................................................................. 5

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   132 S.Ct. 1289 (2012).......................................................................... 14

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
   837 F. 3d 1299 (Fed. Cir. 2016)............................................................ 10

*Microsoft Corp v. i4i Ltd. P'ship*,
   131 S.Ct. 2238 (2011).............................................................. 6, 22, 23

*Microsoft Corp. v. Biscotti, Inc.*,
   878 F.3d 1052 (Fed. Cir. 2017)............................................................ 22

*Midwest Innovative Prod., LLC v. Kinamor, Inc.*,
   No. 16-CV-11005, 2017 WL 2362571 (N.D. Ill. May 31, 2017)...................... 5, 27

*Monsanto Co. v. Scruggs*,
   459 F.3d 1328 (Fed. Cir. 2006)............................................................ 21

*Nalco Co. v. Chem-Mod, LLC*,
   883 F.3d 1337 (Fed. Cir. 2018)............................................................ 22

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008)............................................................ 28

*OddzOn Prods., Inc. v. Just Toys, Inc.*,
   122 F.3d 1396 (Fed. Cir. 1997).................................................. 7, 26, 28

*Payless Shoesource, Inc. v. Reebok Int'l Ltd.*,
   998 F.2d 985 (Fed. Cir. 1993)...................................................... 7, 30

*Planet Bingo, LLC v. VKGS, LLC*,
   576 Fed. Appx. 1005 (Fed. Cir. 2014)..................................................... 8

v

*Pressure Specialist, Inc. v. Next Gen Mfg, Inc.*,
No. 17-cv-6582, 2018 WL 572834 (N.D. Ill. Jan. 24, 2018)....................................22

*Puma SE v. Forever 21, Inc.*,
No. 17-cv-2523, 2017 WL 4771004 (C.D. Cal. June 29, 2017)...............................7

*Repifi Vendor Logistics, Inc. v. Intellicentrics, Inc.*,
No. 4-20-cv-00448, 2021 WL 1196271 (E.D. Tx Mar. 30, 2021)..............................9

*Richardson v. Stanley Works, Inc.*,
597 F.3d 1288 (Fed. Cir. 2010).........................................................................22, 27

*Roberts v. City of Chicago*,
817 F.3d 561 (7th Cir. 2016) ...................................................................................3

*Samsung Electronics Co., Ltd. v. Apple Inc.*,
137 S. Ct. 429 (2016).............................................................................................28

*Sel-O-Rak Corp. v. Henry Hanger & Display Fixture Corp.*,
232 F.2d 176 (5th Cir. 1956) .................................................................................24

*simplehuman, LLC v. iTouchless Housewares & Prod., Inc.*,
No. 19-cv-02701, 2019 WL 5963245 (N.D. Cal. Nov. 13, 2019) ............................7

*State Contracting & Eng'g Corp. v. Condotte Am., Inc.*,
346 F.3d 1057 (Fed. Cir. 2003).............................................................................22

*Tamayo v. Blagojevich*,
526 F.3d 1074 (7th Cir. 2008) ...............................................................................25

*Tech. Licensing Corp. v. Videotek, Inc.*,
545 F.3d 1316 (Fed. Cir. 2008)...............................................................................5

*Teva Pharm. USA v. Sandoz, Inc.*,
135 S.Ct. 831 (2015)...............................................................................................23

*The Chamberlain Group, Inc. v. Linear, LLC*,
114 F.Supp.3d 614 (N.D. Ill. 2015) ...............................................................passim

*TimePlay, Inc. v. Audience Entm't LLC*,
No. 15-05202, 2015 WL 9695321 (C.D. Cal. Nov. 10, 2015) ...............................10

*Trading Techs. v. CQG, Inc.*,
No. 05-cv-4811, 2015 WL 774655 (N.D. Ill. Feb. 24, 2015)..................................16

*Trinity Info Media, LLC v. Covalent, Inc.*,
No. 22-1308, 2023 WL 4536366 (Fed. Cir. July 14, 2023)....................................18

vi

*Ultramercial, Inc. v. HULU, LLC*,
    722 F. 3d 1335 (Fed. Cir. 2013).............................................................................. 18

*Ultramercial, Inc. v. HULU, LLC*,
    772 F. 3d 709 (Fed. Cir. 2014)................................................................................. 11

*Yangaroo Inc. v. Destiny Media Techs. Inc*.,
    No. 09-cv-462, 2009 WL 2836643 (E.D. Wis. Aug. 31, 2009)..................................... 5, 19, 28

**STATUTES**

35 U.S.C. § 101......................................................................................................... 16

35 U.S.C. § 282(a) .................................................................................................... 6, 27, 29

Case 1:23-cv-00261-WCG    Filed 07/31/23    Page 8 of 39    Document 17

# I.    INTRODUCTION

RPI's Motion to Dismiss (Dkt. No. 15) should be denied. At its core, RPI's motion ignores the requirements of Rule 12(b)(6) because it does not take all factual allegations in Tangent's complaint as true, and it fails to view all reasonable inferences in Tangent's favor.

First, Tangent's asserted utility patent, U.S. Patent No. 10,981,350 (the "'350 Patent"), is patent-eligible under 35 U.S.C. § 101. The question under § 101 is whether a patent claim is directed solely to an abstract idea, and if it is, whether it instead addresses an inventive real-world implementation of that abstract idea. On its face, it is clear that the '350 patent is not directed to an abstract idea. Just a cursory look at the claims shows that they relate to an actual physical object and are patent eligible. (*See* Dkt. 15-1, Memorandum in Support of Motion to Dismiss ("Op. Br.") at 4-5). Specifically, Tangent's utility patent is directed to tangible polymer boards that carpenters use to build other tangible objects, such as furniture. The utility patent claims are unlike any of those that courts have invalidated under § 101 in the past. But, even if the Court were to find the claims are directed to abstract ideas, the claims are still patent eligible because they employ inventive concepts directed to real-world implementations.

Second, Tangent's counts relating to its design patents—U.S. Patent Nos. D819,234 (the "'234 Patent") and D819,235 (the "'235 Patent")— should not be dismissed. RPI's motion does not address the sufficiency of Tangent's complaint, but instead delves into affirmative defenses addressing invalidity and non-infringement. These affirmative defenses can only be resolved after claim construction, fact discovery and expert discovery. They are not the proper subject of a motion to dismiss under Rule 12(b)(6), especially at this early stage. Even if Rule 12 practice were appropriate for these defenses, these defenses raise contested factual issues outside the pleadings that cannot be resolved at this stage of the proceeding.

1

## II.      BACKGROUND

Tangent is an early pioneer and leading manufacturer of plastic building materials,

specializing in polymer lumber that may be used in place of real wood lumber. After significant

research and development, Tangent invented a polymer board with wood-graining that is an

improvement on pre-existing plastic lumber. Before Tangent's invention, plastic lumber had

solid-colored cores with a wood-grain appearance only on the surface, such that cutting or

planing (*i.e.*, smoothing) the lumber exposed the non-wood-grained interior. *See* '350 Patent, col.

1:31-61. Unlike previous plastic lumber, Tangent's inventive polymer board includes wood-

graining throughout the board, including the core. Tangent's board can be cut to expose the

wood-grain within the core of the board.

*See, e.g.*, '350 Patent, col. 3:52-61. As a

result of this improvement, Tangent's

inventive polymer lumber is preferred by

craftsman who want to maintain a

consistent wood-grain appearance on all



FIG. 12

exposed surfaces of the final product, such as outdoor furniture. *See*, *e.g*, *id*., col. 3:40-51; *see*

*also id*., Fig. 12 shown above; *id*., 7:60-62 ("The exposed wood grain 16 is clearly visible after

cutting out the shape of the armrest 390.").

The U.S. Patent and Trademark Office issued several patents that protect Tangent's

innovative polymer lumber, including U.S. utility patent number 10,981,350 (the "'350 Patent"),

and design patent numbers D819,234 (the "'234 Patent") and D819,235 (the "'235 Patent"). The

'350 Patent protects the utilitarian structure of the board, and the '234 and '235 Design Patents

protect the ornamental design of the board.

2

RPI has known about Tangent's patents since at least February 2022 when Tangent notified RPI that it was infringing the '350 Patent, '234 Patent, and '235 Patent. Rather than assert that it did not infringe or that Tangent's patents were invalid, RPI apparently changed its polymer board design from Nature Design #1 to Nature Design #2 to try to avoid continued infringement of Tangent's patents. While RPI's two designs differ slightly, Tangent's First Amended Complaint (Dkt. 6, "FAC") asserts that they both infringe Tangent's patents. (FAC at 6-17). RPI did not inform Tangent of its design change and, as of filing its FAC, both designs were still in the marketplace. Notably, RPI did not challenge the validity of Tangent's patents at the U.S. Patent Office after receiving notice of its infringement, choosing instead to change its design.

## III.    RELEVANT LEGAL STANDARDS

### A.    <u>Motion to Dismiss</u>

To defeat a Rule 12(b)(6) motion to dismiss, a complaint must only provide sufficient factual detail to "give the defendant fair notice of what the…complaint is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To make this determination, a court must accept the well-pleaded allegations of the complaint as true, construe the complaint in the light most favorable to the pleading party, and resolve all doubts in the pleader's favor. *See Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

At the 12(b)(6) stage, invalidation of patents under § 101 is restricted to only those instances when "there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc*., 882 F.3d 1121, 1125 (Fed. Cir. 2018). Patent eligibility may contain disputes over underlying facts, such as "[w]hether the claim elements or the claimed combination are well understood, routine, [or] conventional." *Id*. at 1128. And because patents are presumed valid, "[a]ny fact … that is

3

pertinent to the invalidity conclusion must be proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) (internal citations omitted). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012), ("[Plaintiff] correctly notes that courts should usually refrain from granting Rule 12(b)(6) motions on affirmative defenses.").

### B. <u>Patent Eligibility Under 35 U.S.C. § 101</u>

Section 101 contains very few limits to patent-eligibility. The ultimate question under § 101 is whether a patent claims one of the "building blocks of human ingenuity" (and thus ineligible), or instead "integrate[s] the building blocks into something more," (and thus eligible) *Alice Corp. PTY. LTD. v. CLS Bank Int'l*, 134 S.Ct. 2347, 2354 (2014) (internal quotations omitted). These basic building blocks include abstract ideas, laws of nature, and natural phenomena. *Id.* at 2355.

The § 101 test involves two steps. At Step 1, the court determines whether the claims are directed to one of the patent-ineligible concepts, such as an abstract idea. *Alice*, 573 U.S. at 217-18. The court reaches Step 2 only if the claims fail Step 1. *Id.* At Step 2, the court considers the elements of each claim—both individually and as an ordered combination—to determine if it includes an inventive concept. *BASCOM Global Internet Servs. V. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016). Patent claims recite an "inventive concept" if they reflect "something more than well-understood, routine, conventional activities previously known to the industry." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1315 (Fed. Cir. 2019). Courts have noted:

> A fine line must be walked in excluding patents that "pre-empt the use of an approach" that lead to "a monopoly over an abstract idea," while also recognizing

4

that "all inventions … embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.

*Card Verification Solutions, LLC v. Citigroup Inc*., No. 13-cv- 6339, 2014 WL 4922524, at *3 (N.D. Ill. Sept. 29, 2014). Accordingly, a finding of invalidity at the motion to dismiss stage is "rare." *Id.* at *2.

### C. <u>Validity of Design Patents</u>

Design patents are given a presumption of validity that can be overcome only through clear and convincing evidence. *See* 35 U.S.C. § 282(a); *High Point Design LLC v. Buyer's Direct, Inc.*, 621 F. App'x 632, 638 (Fed. Cir. 2015); *Tech. Licensing Corp. v. Videotek, Inc*., 545 F.3d 1316, 1327 (Fed. Cir. 2008). A plaintiff is not required to "plead around" affirmative defenses, so it is inappropriate to dismiss a claim under Rule 12(b)(6) on the basis of an invalidity defense. *Hyson USA, Inc. v. Hyson 2U, Ltd*., 821 F.3d 935, 939 (7th Cir. 2016); *Midwest Innovative Prod., LLC v. Kinamor, Inc*., No. 16-CV-11005, 2017 WL 2362571, at *5 (N.D. Ill. May 31, 2017).

"A claim must be construed before determining its validity just as it is construed before deciding infringement." *Markman v. Westview Instruments, Inc*., 52 F.3d 967, 997 n.7 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Courts typically do not construe claims in motions to dismiss. *See, e.g., In re Bill of Lading Transmission & Processing Sys. Pat. Litig.,* 681 F.3d 1323, 1343 (Fed. Cir. 2012) (noting that "claim construction at the pleading stage—with no claim construction processes undertaken" is "inappropriate"); *Yangaroo Inc. v. Destiny Media Techs. Inc*., No. 09-cv-462, 2009 WL 2836643 at *4 (E.D. Wis. Aug. 31, 2009) (denying motion to dismiss because it "necessarily entails a construction of the claim, which is inappropriate given the infancy of these proceedings"). Moreover, evaluating the validity of the claims of a

5

patent requires deciding factual issues. *See Microsoft Corp v. i4i Ltd. P'ship*, 131 S.Ct. 2238, 2243 (2011).

Due to lack of claim construction, as well as other underdeveloped factual issues, courts also typically do not invalidate patents in motions to dismiss. *Design Ideas, Ltd. v. Lowe's Home Centers*, LLC, No. 3-20-cv-03204, 2021 WL 5611319, at *10 (C.D. Ill. Nov. 30, 2021) (stating that "[t]he Court will not weigh and evaluate evidence in this manner on a 12(b)(6) motion because determination of the substantive merits of Plaintiff's claims is a matter for trial or for summary judgment under Rule 56."); *Design Ideas, Ltd. v. Target Corp*., No. 3-20-cv-03231, 2021 WL 6058698, at *2 (C.D. Ill. Dec. 21, 2021) (denying motion to dismiss design patent claim for alleged invalidity); *H-W Technology, L.C. v. Apple Inc*., No. 3-11-cv-00651, 2012 WL 959316, at *3 (N.D. Tx. Feb 23, 2012) ("[D]ismissing the complaint on grounds of claim invalidity would be premature at best.")

### D. Infringement of Design Patents

Determining whether a design patent has been infringed is a two-part test. First, the court construes the claim to determine its meaning and scope. Second, the fact finder compares the properly construed claim to the accused design. *See Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1341 (Fed. Cir. 2020); *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc*., 942 F.3d 1119, 1129 (Fed. Cir. 2019) (explaining design patent infringement is a question of fact).

Under the "ordinary observer" test, a design patent is infringed "'[i]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other.'" *Id*. (quoting *Egyptian Goddess, Inc. v. Swisa, Inc*., 543 F.3d 665, 670 (Fed. Cir. 2008) (en banc)). Importantly, the patented design and accused

design do not have to be identical to find infringement. *OddzOn Prods., Inc. v. Just Toys, Inc*., 122 F.3d 1396, 1405 (Fed. Cir. 1997). "[M]inor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." *Payless Shoesource, Inc. v. Reebok Int'l Ltd*., 998 F.2d 985, 991 (Fed. Cir. 1993).

"[T]he limited question on a motion to dismiss is whether the claimed design and the accused product share sufficient visual similarity to plausibly allege design-patent infringement." *Five Star Gourmet Foods, Inc. v. Ready Pac Foods, Inc*., No. 5:18-cv-2436, 2019 WL 1260634, at *3 (C.D. Cal. Mar. 18, 2019) (denying motion to dismiss design patent infringement claims); *simplehuman, LLC v. iTouchless Housewares & Prod., Inc*., No. 19-cv-02701, 2019 WL 5963245, at *5 (N.D. Cal. Nov. 13, 2019) (denying a motion to dismiss a design patent infringement claim where the plaintiff's complaint plausibly allege the overall similarity of the designs); *Puma SE v. Forever 21, Inc*., No. 17-cv-2523, 2017 WL 4771004, at *3 (C.D. Cal. June 29, 2017) (concluding that the plaintiff sufficiently alleged that the two designs bear a substantial degree of similarity when considering the overall design).

## IV.    ARGUMENT

### A.    The '350 Patent Is Directed To Patent Eligible Subject Matter

#### 1.    The '350 Patent Claims Are Physical, Not Abstract

The '350 Patent claims are not directed to the bare idea of simulating natural wood or even to *every* polymer board that looks like natural wood, as RPI contends. (*See*, *e.g.*, Op. Br at 14). Instead, the claims are directed to, and specifically recite, real-world, physical objects that can be touched, installed and crafted into useful objects such as furniture. Claims 1 and 10 recite a polymer board/substrate composed of multiple polymer layers of different colors. (*See* Dkt. 6-1 at 16-17). The polymer board has defined physical properties, such as sides and ends that define the board's physical shape. *See id*. The polymer layers are defined in relation to the physical

7

properties, such as extending along the board's length and from side to side. *See id*. The claimed position and placement of these different colored physical polymer layers help the board simulate natural wood-graining, which is a key aspect of the claimed invention. *See id*. That physical nature of the claims is further evidenced by the figures, all of which show various views of a real-world physical object.

The claims, in fact, are not similar to any of the types of inventions that courts have identified as being abstract ideas—a point RPI fails to address in its motion. The asserted claims certainly are ***not*** directed to a process that can be performed entirely in one's head. *See, e.g., Cybersource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011) (stating that "a method that can be performed by human thought alone is merely an abstract idea and is not patent-eligible"). The asserted claims are ***not*** directed to a method for organizing human activity. *See, e.g., Planet Bingo, LLC v. VKGS*, LLC, 576 Fed. Appx. 1005, 1008 (Fed. Cir. 2014). And the asserted claims are ***not*** directed to methods for using a computer to carry out commercial activities. *See, e.g., Alice*, 134 S.Ct. at 2356. All the § 101 ineligibility cases cited by RPI involve patents that are not directed to anything close to physical objects like polymer boards, but instead are directed to computer-implemented processes, commercial activities, and medical diagnostic processes. Indeed, based on Tangent's investigation, the polymer board inventions of the '350 Patent are unlike any claims that any court has ever found ineligible under § 101.

## 2. *Alice* Step 1: The '350 Patent Claims Are Not Directed to Abstract Ideas

As an initial matter, RPI's motion should fail because its sets out an improper and faulty Section 101 analysis. As RPI initially acknowledges, Step 1 requires analyzing the claims as a whole, rather than only focusing on individual claim elements. (Op. Br. at 13). Rather than follow these established steps, RPI improperly dissects the individual elements of the claims and

8

draws separate conclusions for each. (Op. Br. at 13-14); *see Repifi Vendor Logistics, Inc. v. Intellicentrics, Inc.,* No. 4-20-cv-00448, 2021 WL 1196271, at *6 (E.D. Tx Mar. 30, 2021) ("[I]n the Alice/Mayo step-one inquiry, the focus is not on the individual, specific elements of the claim. Instead, the focus is on what all the elements, when taken as a whole, indicate that the claim is directed to.").

In employing this individualistic approach, RPI improperly parses and overgeneralizes the claims to argue that they are limited to appearing like natural wood. Courts have warned against precisely this oversimplifying approach. *See, e.g., In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (quoting *Alice*, 134 S.Ct. at 2354 ("[courts] must be careful to avoid oversimplifying the claims because '[a]t some level, all inventions…embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'")). Here, RPI incorrectly focuses on the phrase "simulated natural wood-grained" in the preamble in Claims 1 and 10 and the phrase "natural wood-grained appearance" in Claim 10 and ignores all the real-world, physical components recited in the claims, including the board, the sides and ends, and the polymer layers of different colors alternating and extending in specific claimed orientations within the board. These are not abstract ideas. Instead, all of these limitations demonstrate that the '350 Patent claims, *as a whole*, are directed to tangible polymer boards with polymer layers that have specific physical attributes.[1] *See McRO, Inc. v. Bandai Namco Games Am. Inc.,* 837 F.

---

[1] The *In re TLI Commc'ns* case that RPI cites for the prospect that "not every claim that recites concrete, tangible components escapes the reach of the abstract-idea inquiry" is easily distinguishable from the current facts. The patent in that case was directed to a method for recording and administering digital images and recited generic physical components, such as "a server" and "telephone unit."  In finding the claims ineligible, the court relied on the fact that the patent "fails to provide any technical details for the tangible components" and the patent "does not describe a new telephone, a new server, or a new physical combination of the two." *In re TLI Commc'ns*, 823 F.3d at 612. In contrast, the '350 Patent focuses directly on the tangible

9

3d 1299, 1313 (Fed. Cir. 2016) (denying invalidity challenge, explaining "[c]ourts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims.") (quotation omitted)); *see also Diamond v. Diehr*, 450 U.S. 175, 188 (1981).

Moreover, Tangent's patent claims are similar to other patent claims reciting physical and tangible components that courts have long recognized are directed to patent-eligible subject matter in the face of § 101 challenges. *See, e.g., The Chamberlain Group, Inc. v. Linear, LLC*, 114 F.Supp.3d 614, 625 (N.D. Ill. 2015) (claims directed to network interface and movable barrier have "clear concrete and tangible form"); *Baxter Int'l, Inc. v. CareFusion Corp*., No. 1:15-cv-09986, 2016 WL 2770787, at *11 (N.D. Ill. May. 13, 2016) (upholding claims reciting specific structural components as directed to "concrete, tangible instrument"); *TimePlay, Inc. v. Audience Entm't LLC*, No. 15-05202, 2015 WL 9695321, at *6 (C.D. Cal. Nov. 10, 2015) (upholding claims that "require[] the use of multiple hardware components"); *Canrig Drilling Tech., Ltd. v. Trinidad Drilling L.P*., No. H-15-0656, 2015 WL 5458576, at *4 (S.D. Tex. Sept. 17, 2015) (claims that "address specific challenges in directional [oil] drilling through a concrete process . . . directed to a physical apparatus" are not abstract idea); *ID Image Sensing LLC v. OmniVision Tech., Inc*., No. 1-20-cv-00136, 2020 WL 6888270, at *3 (D. Del. Nov. 24, 2020) (claim directed to camera module reciting subcomponents "not a claim to an abstract idea – and that it is instead a claim to a nonabstract, physical item that contains additional various non-abstract, physical elements, which in turn must execute particular functions."); *EcoServices, LLC v. Certified Aviation Services, LLC,* 830 F. App'x 634, 643 (Fed. Cir. 2020) (upholding claims

---

components of the polymer board and its polymer layers, and the claims of the '350 Patent recite the physical details of the polymer layers.

"directed to a specific combination" of components that are "configured in a certain way to create technical improvements to systems").

RPI's motion also misapplies the Step 1 analysis by arguing that the claims are directed to an abstract idea because the claims do not dictate "*how* such polymer boards are to be made." (Op. Br. at 14) (emphasis in original). It is difficult to see how this argument supports RPI's motion given that "how" the polymer board is made is irrelevant to a § 101 test.[2] Section 101 defines that patentable inventions can be "any new and useful process, machine, manufacture, *or* composition of matter." (35 U.S.C. § 101 (emphasis added); *see also* 37 CFR § 1.141(b) (distinguishing between patent claims to three categories of inventions – "product, process of making, and process of use."). RPI cites no legal authority, and Tangent has been unable to locate any, that requires a product claim to recite the product *and also* how the product is made. *See In re Maloney*, 411 F.2d 1321, 1323 (CCPA 1969) ("[C]laims to compositions of matter may be separately patentable whether or not process claims drawn to the method of making those compositions are patentable."). The '350 Patent claims are directed to a polymer board (*i.e.*, a product), and thus do not need to claim how the polymer board is made.

Properly applying the *Alice* test to the '350 Patent shows the claims are not abstract. Under *Alice's* Step 1, an idea is abstract only if it has "no particular concrete or tangible form." *Chamberlain*, 114 F.Supp.3d at 624 (quoting *Ultramercial, Inc. v. HULU, LLC*, 772 F. 3d 709, 715 (Fed. Cir. 2014) (finding claims ineligible as directed to the method of using advertising as

---

[2] This appears to be some sort of misplaced § 112 written description or enablement argument, which is clearly not the subject of Defendant's motion under § 101 nor is it relevant to the motion at hand in any way. *See* 35 U.S.C. § 112 ("The specification shall contain a written description of the invention, and of the manner and process of making and using it…. The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the…invention.")

currency that is devoid of a concrete or tangible application); *see also ID Image Sensing*, 2020 WL 6888270, at *3 (denying motion to dismiss on § 101 eligibility because invention is "a claim to a nonabstract, physical item that contains additional various non-abstract, physical elements, which in turn must execute particular functions."). The claims of the '350 Patent are directed to an object with "concrete and tangible form" – a polymer board – and, furthermore, they are "tied to a particular concrete application" – the improved polymer board with different colored polymer layers. As explained above, the claims specify several real-world, physical components. For example, Claim 1 recites a "***polymer board*** having a ***first side*** and a ***second side*** spaced apart from the ***first side***" and "a length direction between a ***first end*** and a ***second end***" and "***polymer layers*** extending along the length direction" where the "***polymer layers*** alternate within the ***board*** and extend along a substantially uninterrupted curvilinear path originating proximate the ***first side of the board*** and terminating proximate the ***second side of the board***."

The specification of the '350 Patent also demonstrates that the claimed inventions are concrete and tangible. *Chamberlain*, 114 F.Supp.3d at 625 (relying on patent specification to hold the claims are not directed to an abstract idea); *Baxter Int'l, Inc. v. CareFusion Corp.*, No. 1:15-cv-09986, 2016 WL 2770787, at *9 (N.D. Ill. May. 13, 2016) (citing to patent specification to show the claims are "directed to a concrete, tangible instrument.") Numerous references are made to the tangible inventive polymer board/substrate:

> The present disclosure relates to polymer composites and more particularly to polymer composites that are used as a natural wood substitute or replacement. (Col. 1:13-15)

> [H]igh density polyethylene wood-grained substrate includes a plurality of layers of different colors. The substrate is formed into elongated boards… (Col. 2:30-33)

> Various cross-sectional profiles are possible, such as round, polygonal, or other unique shapes, such as those used for molding used around windows and doors for example. (Col. 7:2-5).

12

The specification also states that the claimed polymer board/substrate can be used to manufacture physical products for end-users:

> [P]olymer substrates 10, 210 can be post-processed, such as by planning or embossing, and cut to form various sized boards used to make polymer-lumber end products, such as those shown in FIGS. 12 and 13. (Col. 3:40-43)

> The boards can be shipped to customers that design and build a multitude of end products, such as furniture, and they can fabricate the end products using the wood-grained polymer boards of the present disclosure just as they typically would using natural wood lumber. (Col. 3:43-48)

> Fabrication using the polymer boards could include drilling, routing, and cutting to build multi-component products such as outdoor furniture, including adirondack chairs and park benches for example. (Col. 4:48-51)

> Other structural and non-structural uses, such as decking and siding for example, are contemplated by this disclosure. (Col. 8:1-3).

The '350 Patent figures also illustrate some of the physical end-user products that may be formed from the claimed polymer boards. For example, Figures 12 and 13 show armrests made from the claimed polymer boards for use in Adirondack chairs. This type of tangible concrete product, with several physical components, is not an abstract idea. *See Chamberlain,* 114 F.Supp.3d at 625 ("The '977 Patent claims do not fall within the contours of an abstract idea or patent-ineligible computer implementation of an abstract idea as they have physical and tangible components that are directed to more than performance of an abstract idea."); *Baxter*, 2016 WL 2770787, at *10 ("Baxter has anchored the claimed subject matter to a concrete form, and to a particular application, thus rendering it patent eligible.")

### 3. *Alice* Step 2: The '350 Patent Claims Address a Particular Implementation and Include Inventive Concepts

Because RPI has not established that the claims are directed to an abstract idea, the Court need not even reach Step 2. For the sake of completeness, we address Step 2 below.

13

Assuming the Court determines the claims of the '350 Patent are directed to an abstract idea (they are not), the claims would still be patent eligible because they address a *particular implementation* of the idea and recite inventive concepts. *See Alice*, 134 S.Ct. at 2355; *Mayo Collaborative Servs. v. Prometheus Labs., Inc*., 132 S.Ct. 1289, 1294 (2012) (explaining that in Step 2, the court determines whether the material recited in the claim, other than the abstract idea, is enough to ensure that the claim is not on the abstract idea itself, but is instead on an implementation of the idea).

The '350 Patent claims pass Step 2 even under RPI's alleged abstract idea of "aesthetic of natural wood." (Op. Br. at 16). The '350 Patent claims do not preempt every polymer board that has the aesthetic of natural wood. Instead, the claims are directed to a particular physical polymer board (*i.e.*, a particular implementation) that requires first and second sets of polymer layers of different colors that extend along the length of the board and alternate within the board. Those requirements alone carve out numerous other ways to create a simulated natural wood-grained polymer board. Indeed, the background section of the '350 patent describes several alternative implementations, all of which are outside the scope of claims. *See*, *e.g*., '350 Patent at col. 1:42-61 (disclosing prior art wood-grain polymer boards). Similarly, the claims are directed to *polymer* boards, and thus do not preempt non-polymer-based wood-grained boards, *e.g.* manufactured wood boards and hemp boards. *BASCOM*, 827 F.3d at 1350) (reversing district court's motion to dismiss finding claims include specific limitations that did not preempt all ways of filtering content on the Internet).

The claims include other limitations that support eligibility by requiring a particular physical implementation. Claim 1 requires a majority of the polymer layers to extend along the length of the entire board and Claim 10 requires a majority of the polymer layers to be

14

substantially continuous along the first direction. Both claims also require a portion of the polymer layers to extend along a substantially uninterrupted curvilinear path originating proximate the first side and terminating proximate the second side of the board. It is these implementation-specific requirements that allow the polymer board to achieve its wood-grain appearance on the surface as well as throughout the core, which is exposed when the board is cut. *See, e.g.*, '350 Patent, col. 3:52-61; col. 6:24-26; col. 6:39-41; col. 8:7-17; *see Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1338 (Fed. Cir. 2016) (upholding claims based on "specific type of data structure designed to improve the way a computer stores and retrieves data in memory."); *Chamberlain*, 114 F.Supp.3d at 627 (upholding claims directed to a particular type of interface for networked garage door opener); *Baxter*, 2016 WL 2770787, at *11 (upholding claims based on the "claims' ties to mechanical and electrical components.").

The '350 Patent claims also include inventive concepts over the prior art, as confirmed by both the U.S. Patent Office and the Patent Trial and Appeal Board ("PTAB").[3] These inventive concepts include, for example, the requirements of the polymer layers discussed above, such as a majority of the polymer layers extending along the length of the entire board and a portion of the polymer layers extending along a substantially uninterrupted curvilinear path originating proximate the first side and terminating proximate the second side of the board. These claim requirements transform the idea of a board abstractly having a natural wood appearance into real-world, specific application that improves on previous polymer boards that also tried to appear like natural wood, but in a much different way. *See DDR Holdings LLC v. Hotels.com*, 773 F.3d

---

[3] Notably, the '350 Patent underwent exceptional scrutiny at the Patent Office. Not only was the patent thoroughly examined by the Examiner, the PTAB also reviewed the case. At no time in either of these forums was a § 101 eligibility rejection raised by the Examiner or the PTAB even though they had the benefit of the Supreme Court's § 101 test from *Alice* and the Patent Office's guidance regarding the test for more than two years before the '350 Patent was filed.

1245, 1259 (Fed. Cir. 2014) (upholding claims that "recite a specific way to automate the creation of a composite web page"); *Chamberlain*, 114 F.Supp. at 628 (upholding claims that include specific additional elements beyond a generic computer); *Baxter*, 2016 WL 2770787, at *11; *Trading Techs. v. CQG, Inc.*, No. 05-cv-4811, 2015 WL 774655, at *5 (N.D. Ill. Feb. 24, 2015) (upholding claims directed to eliminating problems with GUIs meet inventive concept prong).

Finally, the Supreme Court has indicated that, while not the sole test, the machine-or-transformation test "may well provide a sufficient basis for evaluating processes similar to those in the Industrial Age – for example, inventions grounded in a physical or other tangible form," *i.e.*, polymer boards. *See Chamberlain*, 114 F.Supp. at 628 (citing *Bilski v. Kappos*, 561 U.S. 593, 605 (2010)); *Baxter*, 2016 WL 2770787, at *11. A claimed invention can be patent-eligible if: "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *In re Bilski*, 545 F.3d 943, 954 (Fed.Cir.2008*) (en banc), aff'd, Bilski,* 561 U.S. 593, 130 S.Ct. 3218. The '350 Patent satisfies both prongs. As discussed above, the '350 Patent claims are tied to a particular apparatus – the polymer board – that is comprised of multiple polymer layers having a specific structural arrangement.

RPI's Step 2 analysis is flawed. In Step 2, the court considers all the elements of each claim, not just individually, but also "as an ordered combination" to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application. *Alice*, 134 S. Ct. at 2355. RPI's Step 2 analysis does not consider *any* elements of the claim, let alone the combination of the claim elements. Instead, RPI incorrectly alleges that the '350 Patent claims fail Step 2 because they "do not recite a particular method of achieving that abstract result of a board/substrate that looks like natural wood." (Op. Br. At 15). As an initial matter, and as

described above, RPI's argument that the claims must describe the process of making the polymer board are irrelevant. *See supra* at 11; *see In re Maloney*, 411 F.2d at 1323. In any event, the claims require a specific arrangement of polymer layers to achieve the claimed polymer board having a simulated wood-grain design. RPI recognized as much in its Step 1 analysis, agreeing that "limitations [1a] and [1b] []describe the orientation of the natural wood design" and "limitations [10a] and [10b] describe the orientation of the natural wood design" and that "[the colored layers] are intended to impart a wood grain appearance to the finished product." (Op. Br. at 13-14).

Finally, RPI's reliance on *Elec. Power Group, LLC v. Alstom,* 830 F.3d 1350 (Fed. Cir. 2016), is misguided. (*See* Op. Br. at 15). *Elec. Power* did not hold that the claims at issue failed to include an inventive concept because "they do not recite how to achieve the desired result," as RPI suggests. Instead, the Court found that the claims *did* recite how to achieve the result, but that the recited "how" was not inventive because it only required a generic and conventional computer and display devices:

> The claims at issue do not require any nonconventional computer, network, or display components, or even a non-conventional and non-generic arrangement of known, conventional pieces, **but merely call for performance of the claimed information collection, analysis, and display functions on a set of generic computer components and display devices**.

*Id. at* 1355 (internal citations and quotations omitted) (emphasis added).[4]

---

[4] RPI's incorrect characterization of *Elec. Power* stems from the Court's use of the word "requirements" in the statement: "Inquiry therefore must turn to any requirements for *how* the desired result is achieved." *Id*. (emphasis in original). But the Court was not stating that it is a "requirement" (*i.e.* obligation) for patent claims to recite how a result is achieved, as RPI argues. Instead, the Court used the term "requirement" to mean "claim requirement," *e.g.* something that must be included to practice the claim. This makes sense because Step 2 determines if the claims recite (*i.e.* require) a particular implementation of an abstract idea and recite inventive concepts. Regardless, *Elec. Power* is inapposite here because the '350 Patent claims do in fact recite how to achieve the desired result with claim limitations that are inventive concepts, such as the requirements for the polymer layers discussed above.

#### 4. RPI's § 101 Challenge to the '350 Patent is Premature

Dismissal on patent eligibility grounds is typically inappropriate at the preliminary 12(b)(6) stage due to the "presence of factual issues coupled with the requirement for clear and convincing evidence." *Ultramercial, Inc. v. HULU, LLC*, 722 F. 3d 1335, 1339 (Fed. Cir. 2013) ("[T]he *only* plausible reading of the patent must be that there is clear and convincing evidence of ineligibility. For those reasons, Rule 12(b)(6) dismissal for lack of eligible subject matter will be the exception, not the rule.") (emphasis in original). Factual issues that preclude dismissal include, for example, to what extent the claims include an abstract idea, whether the claims are tied to specific implementation, how much of the relevant field of art is preempted by the claims, and whether claim elements are inventive or merely conventional. *Id*.; *see also Berkheimer v. HP Inc.*, 890 F.3d 1369, 1370 (Fed. Cir. 2018). Each of these factual issues are present here, as discussed above in Sections IV.A.2 and A.3.[5] Given that the Court accepts all well pleaded allegations as true and draws all reasonable inferences in the claimant's favor in deciding a Rule 12(b)(6) motion, RPI's motion should be denied on this basis alone. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 547).

RPI's motion also prematurely introduces claim construction issues into the § 101 analysis without the benefit of the claim construction process or a *Markman* hearing. *See BanCorp Servs., LLC v. Sun Life Assurance Co. of Canada*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012) ("[I]t will ordinarily be desirable — and often necessary — to resolve claim construction disputes prior to a § 101 analysis."); *Trinity Info Media, LLC v. Covalent, Inc*., No. 22-1308, 2023 WL 4536366, at *3 (Fed. Cir. July 14, 2023) (explaining that identifying a specific claim construction issue or specific discovery issue can avoid grant of a motion to dismiss under §

---

[5] RPI's motion also acknowledges the factual issue of whether the '350 Patent monopolizes natural wood looking polymer boards. *See* Op. Br. at 15 FN 2.

101). Not surprisingly, RPI construes the claim elements to have meanings that benefit its argument. *See*, *e.g.*, Op. Br. at 14 ("Claim elements [1c] and [10d] recite that the alternating colored layers of the board or substrate are to follow a substantially uninterrupted curvilinear path, once again describing the abstract idea of a board that looks like natural wood."). On its face, RPI's claim constructions are wrong for several reasons.

First, suggesting claim elements [1c] and [10d] have the same meaning is legally incorrect because the claims use different words. For example, claim element [10d] does not mention alternating polymer layers and claim element [1c] does not mention anything related to looking like natural wood. Accordingly, it is incorrect to suggest the different terms have the same meaning. *CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings.").

Second, RPI's proposed claim construction is incomplete because the term "substantially uninterrupted curvilinear path" remains unconstrued. Without prematurely engaging in a claim construction (since no discovery has taken place), the term "substantially uninterrupted curvilinear path" appears to mean a curved line with few interruptions. RPI has introduced no evidence that a curved line with any interruptions necessitates that a board looks like natural wood or that such a line describes an abstract idea of a board that looks like natural wood. (Op. Br. at 13-14). This need for claim construction further demonstrates why RPI's motion should be denied. *See Yangaroo Inc. v. Destiny Media Techs*., No. 09-C-462, 2009 WL 2836643, at *3-4 (E.D. Wis. Aug. 31, 2009) ("the proper time for this Court to address claim construction is not in a motion to dismiss"); *see also Celgene Corp. v. Lotus Pharm. Co*., No. 17-cv-6842, 2018 WL 6584888, at *2 (D.N.J. Dec. 14, 2018) ("Courts routinely deny § 101 motions as premature

19

where claim construction disputes exists"); *Deston Therpaeutics LLC v. Trigen Labs., Inc*., 723 F.Supp.2d 665, 670-71 (D. Del., 2010); *Fujitsu Ltd. v. Belkin Int'l, Inc*., 782 F.Supp.2d 868, 889-90 (N.D. Cal. 2011); *In re Bill of Lading Transmission & Processing Sys. Patent Litig*., 695 F.Supp.2d 680, 684 (S.D. Ohio 2010).

### 5. The '350 Patent Claims Are Proper for a Utility Patent

The '350 Patent claims are not directed to a mere ornamental design, as suggested by RPI. (Op. Br. at 16). The '350 Patent claims meet the utility requirement of § 101 by having a "useful" purpose.[6] *See, e.g*., '350 Patent, col. 3:43-48 ("The boards can be shipped to customers that design and build a multitude of end products, such as furniture, and they can fabricate the end products using the wood-grained polymer boards of the present disclosure just as they typically would using natural wood lumber."). The claims are also directed to a polymer board that is an improvement over previous polymer boards that look like natural wood. *See, e.g*., '350 Patent, col. 3:52-61; col. 6:24-26; col. 6:39-41; col. 8:7-17 (explaining that one of the improvements of the '350 Patent polymer boards is that their wood-grain appearance is throughout the core as well as on the surface, which allows the wood-grain to be seen when the board is cut).[7] Finally, RPI cites no authority suggesting that similar figures in design and utility patents somehow negate the utility of claims in the utility patent.

---

[6] Tangent is not obligated to affirmatively prove the validity of its patents in the complaint since the patents are presumed valid. 35 U.S.C. § 282(a).

[7] Defendant wrongly characterizes *Harmon Paper Co. v. Prager*, 287 F. 841, 844 (2d Cir. 1923) as invalidating claims related to the § 101 utility requirement. The claims were invalidated for lack of inventive concept. *Id*. at 844 (stating that "the patentee has made an attractive rearrangement of old matter by old means, and such rearrangement has spelled commercial success. This is the best that can be said for the patent, and that is not enough… There must always be some mechanical, chemical, electrical (or the like) component *in the inventive concept, some technical achievement* on which to build.") (emphasis added).

20

**B.** **Tangent's Design Patent Claims (Counts II and III) Should Not be Dismissed for Invalidity**

RPI argues that Counts II and III of Tangent's FAC should be dismissed because the '234 and '235 design patents are allegedly invalid for lack of "originality." (Op. Br. at 18-19). This argument fails for multiple reasons. First, issues related to validity and other affirmative defenses are premature at the motion to dismiss stage of litigation. Second, RPI has not come anywhere close to meeting its high burden to prove invalidity by clear and convincing evidence.

**1.** **RPI's Invalidity Challenge is Premature**

**a.** **Affirmative Defenses Should Not be Decided in Motions to Dismiss**

RPI's motion prematurely argues the merits of its invalidity affirmative defense. "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990); *see also Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012), ("[C]ourts should usually refrain from granting Rule 12(b)(6) motions on affirmative defenses."). An affirmative defense "does not render the claim for relief invalid," especially considering that affirmative defenses rely on evidence not available at the motion to dismiss stage. *Brownmark*, 682 F.3d at 690; *Cable TV Fund 14-A, Ltd. v. City of Naperville*, No. 96-C-5962, 1997 WL 280692, at *5 (N.D. Ill. May 21, 1997) ("[I]t is usually necessary to rely upon matters outside of the complaint to establish an affirmative defense.").

RPI's challenge to the validity of Tangent's two design patents is an affirmative defense that goes to the merits—not the sufficiency—of Tangent's FAC. *See, Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1334 (Fed. Cir. 2006) (citing 35 U.S.C. § 282). Affirmative defenses, such as invalidity, are rarely decided in a motion to dismiss, since "a plaintiff ordinarily need not anticipate and attempt to plead around affirmative defenses." *Hyson USA, Inc. v. Hyson 2U, Ltd.*,

821 F.3d 935, 939 (7th Cir. 2016). A plaintiff is not required to "prove its case at the pleading stage" by arguing to defeat affirmative defenses. *In re Bill of Lading Transmission*, 681 F.3d at 1339. Thus, RPI's motion should be denied as premature.

### b. Facts Are Not Sufficiently Developed to Determine Invalidity

Beyond the fact that a motion to dismiss based on any affirmative defense is premature at this stage, the specific basis underlying RPI's patent validity challenge cannot currently be decided. There has been no discovery, no claim construction, and no *Markman* hearing—all of which are necessary to make an informed decision on the validity of the '234 and '235 patents. *See Microsoft Corp v. i4i Ltd. P'ship*, 131 S.Ct. 2238, 2243 (2011) (explaining that determining patent invalidity involves deciding factual issues); *see also Microsoft Corp. v. Biscotti, Inc*., 878 F.3d 1052, 1068 (Fed. Cir. 2017) (same).

It is boilerplate Federal Circuit law that "[a] claim must be construed before determining its validity just as it is construed before deciding infringement." *Markman*, 52 F.3d at 997 n.7; *State Contracting & Eng'g Corp. v. Condotte Am., Inc*., 346 F.3d 1057, 1067 (Fed. Cir. 2003). As noted above, motions to dismiss are not the proper stage for construing terms. *See, e.g., Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (reversing district court's patent invalidity determination because it was "not appropriate to resolve these disputes…without the benefit of claim construction"); *Pressure Specialist, Inc. v. Next Gen Mfg, Inc*., No. 17-cv-6582, 2018 WL 572834, at *3 (N.D. Ill. Jan. 24, 2018) (noting that "district courts have 'repeatedly held that if a court is required to construe the meaning of claim terms and perform an infringement analysis in order to resolve a motion to dismiss ... the motion should be denied, because this type of analysis is inappropriate at the pleading stage,'" and collecting cases).

For design patents, claim construction assesses the scope of the claimed designs. *See Richardson v. Stanley Works, Inc*., 597 F.3d 1288, 1293 (Fed. Cir. 2010) (stating that "a court's

22

guidance would be useful" on claim construction for design patents). While a design patent's figures typically control in construing claims, "it is inappropriate to ignore" the text of the patent, which may identify additional elements. *Curver Luxembourg, SARL v. Home Expressions Inc.*, 938 F.3d 1334, 1341 (Fed. Cir. 2019). As noted above, the Court has not conducted a *Markman* hearing, thus RPI's arguments are premature. *See supra* at 18-20. In any event, RPI argues that Tangent's design patents are invalid because their scope includes natural wood-grain boards. (Op. Br. at 19). However, each design patent explicitly claims "the ornamental design for a wood-grained polymer board." ('234 and '235 Patents at cover) (emphasis added). Since RPI has failed to give the text of the claim any weight, there is at minimum a debate as to the scope of the patents' claims. *See Teva Pharm. USA v. Sandoz, Inc.*, 135 S.Ct. 831, 841 (2015) (discovery and extrinsic evidence may be required to resolve claim construction disputes). Therefore, it is not possible to assess validity at this stage. Thus, RPI's motion to dismiss Counts I and II should be denied as premature, as no discovery or claim construction has taken place.

## 2. RPI Has Not Established Invalidity by Clear and Convincing Evidence

RPI argues that Tangent's design patents are invalid for lack of originality based on the allegation that they merely emulate natural wood grain. (Op. Br. at 18-19). RPI must show by clear and convincing evidence that Tangent's design patents are invalid. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 101 (2011) ("[a] defendant raising an invalidity defense bore *a heavy burden of persuasion*, requiring proof of the defense by clear and convincing evidence.") (emphasis added). RPI has come nowhere close to meeting his heavy burden.

Tangent's design patents meet the requisite "originality" requirement, as confirmed by the Patent Office having examined and issued them as patents. The inventions stand on their own as being the "ornamental design for a wood-grained polymer board, as shown and described" in

23

the patent figures. ('234 and '235 Patents at cover). The design patents' claims, titles, and descriptions are all directed to a "wood-grained polymer board," not simulated natural wood boards, as RPI suggests. Further, a design patent can meet the "originality" requirement by including a "reassembling or regrouping of familiar forms and decorations," so not every part of the design needs to be original. *American Fabrics Co. v. Richmond Lace Works*, 24 F.2d 365, 367 (2d Cir. 1928); *see also Sel-O-Rak Corp. v. Henry Hanger & Display Fixture Corp.*, 232 F.2d 176, 179 (5th Cir. 1956).

RPI's argument regarding lack of originality is conclusory and rests entirely on attorney argument, which is insufficient to establish invalidity. *Biotec Biologische Naturverpackungen GmbH v. Biocorp, Inc.*, 249 F.3d 1341, 1353 (Fed. Cir. 2001) (holding that conclusory statements of counsel or a witness are insufficient to establish a patent is invalid). RPI has not pointed to single piece of prior art that allegedly renders the design patents invalid. RPI has not alleged or provided evidence that Tangent's designs were ever in existence before the patent filings. Nor has RPI alleged or provided evidence that Tangent copied a pre-existing natural wood board or used pre-existing images when creating its design patents.

Without identification of any prior art with which to compare the design patents, RPI's assertions are hypothetical.[8] RPI has only cited text from the legally unrelated '350 utility patent to suggest the claimed designs merely simulate natural wood. (Op. Br. at 19.) The '234 and '235 design patents make no mention of simulating natural wood. The design patents explicitly state

---

[8] The *Neo-Art, Inc. v. Hawkeye Distilled Prods.* case RPI cites for design patent invalidity is easily distinguishable from the issue here because in that case the design patent was invalidated as being obvious, not for lack of originality, even though the court made passing reference to the statutory requirement that design patents must be "new, original and ornamental." *See* 654 F. Supp. 90, 93 ("The Court holds that the patent is invalid because it produces a visual impression which is no more than the aesthetically self-evident result of combining functionally *obvious* design elements.") (emphasis added).

that they are each a "new design" directed to a "wood-grained polymer board." ('234 and '235

Patents at cover). Also, the utility patent and design patents do not claim priority to each other

and RPI provides no legal authority suggesting that statements from an unrelated utility patent

have any bearing on design patents. *See Abbott Labs. v. Dey, L.P.*, 287 F.3d 1097, 1104 (Fed.

Cir. 2002) (finding the relationship between two unrelated patents, although having common

subject matter, a common inventor, and the same assignee, insufficient to cause statements made

in relation to one patent applicable to the other patent's claim scope); *see also Apple Inc. v.

Motorola, Inc*., 757 F.3d 1286, 1312 (Fed. Cir. 2014) ("statements made in unrelated

applications are not relevant to claim construction"). Even if there is any debate about the fact of

whether the patented designs are directed to natural wood, that factual issue must be resolved in

Tangent's favor at this stage. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

As a result, RPI has not met its "heavy burden" to invalidate the patents by clear and

convincing evidence.

C. **Tangent's Design Patent Claims (Counts II and III) Satisfy the Pleading Standard for Infringement**

1. **Tangent Sufficiently Alleged Design Patent Infringement**

RPI does not—and cannot—credibly dispute that Tangent's design patent infringement

claims meet the pleading standards. In order to survive a motion to dismiss, a complaint for

infringement of a design patent infringement claim need only (1) allege ownership of the patent,

(2) name each defendant, (3) cite the infringed patent, (4) allege the means by which the

defendants infringed the patent, and (5) point to the sections of patent law invoked. *See., e.g.,

Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1362 (Fed. Cir. 2013). Each of these elements

is met in Tangent's complaint. (*See* FAC at 3 (identifying ownership), at 1 (identifying named

defendant), at 3 (identifying infringed patent), at 13, 15-16 (identifying means of infringement), at 13, 15 (identifying sections of patent law invoked)).

Courts have also denied motions to dismiss where the patented design and the accused design were sufficiently similar to plausibly allege infringement, even if there might be some notable dissimilarities. *See Five Star Gourmet Foods, Inc. v. Ready Pac Foods, Inc*., No. 5:18-cv-2436, 2019 WL 1260634, at *3 (C.D. Cal. Mar. 18, 2019) ("[T]he limited question on a motion to dismiss is whether the claimed design and the accused product share sufficient visual similarity to plausibly allege design-patent infringement."). "The patented and accused designs do not have to be identical in order for design patent infringement to be found." *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997).

Tangent's FAC included a visual comparison to show the similarity between its patented designs and the accused products. (FAC at 13, 15-16). The FAC also alleged that an ordinary observer would find them to be "substantially the same." (FAC at 13, 16). These allegations, and the patents and images included in the FAC, meet Tangent's burden to plead that ordinary consumers would be deceived by the similarity between the accused product and patent at issue. *See Hall*, 705 F.3d at 1363; *Five Star Gourmet Foods,* 2019 WL 1260634, at *3. Tangent's design patent infringement claims therefore plausibly allege infringement, especially considering all facts and inferences must be drawn in Tangent's favor. *See Tamayo*, 526 F.3d at 1081.

### 2. RPI's Non-Infringement Arguments Improperly Focus on the Merits

RPI does not dispute that Tangent's complaint adequately pleads design patent infringement, but rather improperly skips this step and jumps into arguing its affirmative defense of non-infringement. RPI's arguments should be rejected for this reason alone. *Gibson*, 910 F.3d at 1520 (explaining that motions to dismiss exist to challenge the sufficiency, not the merits of a complaint); *see also Liqui-Box Corp. v. Scholle IPN Corp*., 449 F.Supp.3d 790, 798 (N.D. Ill.

26

2020) ("Defendants' argument for … infringement focuses, essentially, on the merits of the infringement dispute. Such an inquiry is premature on a motion to dismiss."); *Design Ideas, Ltd. v. Lowe's Home Centers LLC*, No. 20-CV-3204, 2021 WL 5611319 at \*10 (C.D. Ill. Nov. 30, 2021) ("The Court will not weigh and evaluate evidence in this manner on a 12(b)(6) motion because determination of the substantive merits of Plaintiff's claims is a matter for trial or for summary judgment under Rule 56."); *Midwest Innovative Prod., LLC v. Kinamor, Inc.*, No. 16-cv-11005, 2017 WL 2362571, at \*2 (N.D. Ill. May 31, 2017) (denying motion to dismiss where "[d]efendants seek a determination of the substantive merits of the controversy").

Here, Part IV.C of RPI's motion compares images of its designs to figures in Tangent's design patents. (Op. Br. at 20-23). Based on these images, and without ever identifying an "ordinary observer," RPI applies the "ordinary observer" test and unilaterally concludes that no such observer would find RPI's designs to be "substantially the same" as Tangent's design patents. This argument goes to the merits of Tangent's allegations and RPI's defenses, not the sufficiency of the FAC. *See Design Ideas,* 2021 WL 5611319 at \*10.

### 3. It is Premature to Decide Infringement

"Design patent infringement is a question of fact." *Richardson*, 597 F.3d at 1295; *Five Star Gourmet*, 2019 WL 1260634, at \*3 ("Ultimately, determining infringement, and an ordinary observer comparison, are matters for the trier of fact."). Determining whether a design patent is infringed is a two-step process. First, the court must construe the design patent's claim. *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995). Next, the fact-finder must compare the patented design and the accused design using the "ordinary observer" test. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 677 (Fed. Cir. 2008) (en banc).

A design patent is infringed "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same." *Samsung Electronics Co.,*

*Ltd. v. Apple Inc.*, 137 S. Ct. 429, 432 (2016) (internal citation omitted). The hypothetical "ordinary observer" has knowledge of the prior art because the differences between the claimed and accused designs are viewed in light of the prior art. *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) (citing *Egyptian Goddess*, 543 F.3d at 677-678). The accused infringer has the burden of production for the comparison prior art. *Egyptian Goddess*, 543 F.3d at 679. "The patented and accused designs do not have to be identical in order for design patent infringement to be found." *OddzOn Prods*, 122 F.3d at 1405. Infringement can be found literally or through the doctrine of equivalents. *See Lee v. Dayton-Hudson Corp*., 838 F.2d 1186, 1190 (Fed. Cir. 1988). Thus, the complaint need only allege, such as through visual comparisons, that an ordinary observer would be deceived by the similarity between the accused product and patent at issue. *See Hall*, 705 F.3d at 1363.

Discovery is necessary to develop the facts to establish infringement. For example, the ordinary observer and their knowledge of the prior art must be established, the accused designs must be compared to the patented designs, and both must be compared to the prior art to determine if two designs are substantially the same in light of the prior art. At this stage, however, any facts that do exist must be construed in Tangent's favor. The scope of the claims must also be determined through claim construction before deciding infringement. *Elmer*, 67 F.3d at 1577; *see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co*., 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("'[C]laim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement.'"). But as noted above, courts typically do not construe claims in motions to dismiss. *See, e.g., Yangaroo*, 2009 WL 2836643 at *4.

Without the benefit of discovery, claim construction, or prior art as a comparison, RPI's motion improperly concludes that no ordinary observer could find the accused designs "substantially the same" as the patented designs. (Op. Br. at 21, 23). To make this infringement determination, RPI first engages in claim construction to attempt to establish the scope of Tangent's design patents. (Op. Br. at 20, 22). RPI then goes on to perform a perfunctory ordinary observer analysis using its unilateral claim construction to determine that its accused designs allegedly differ substantially from Tangent's design patents, focusing only on a few alleged differences. (*Id*. at 20-21 and 22-23.) For example, the entirety of RPI's ordinary observer analyses for its accused Nature Design #1 and Nature Design #2 in comparison to the '234 Patent is one sentence for each accused design that simply states that the accused designs do not have the features of design patents based on RPI's unilaterally construed claims. (*Compare id*. at 20 ("The claimed design of the '234 consists mostly of continuous, curved lines extending from the left-most to the right-most edge of the cross section of the board, with those lines being in close contact with one another such that they largely fill the face of the board,") *with id*. at 21 ("[Nature Design #1] consists of lines that do not extend from the left-most to the right-most edge of the board, with those lines also being sparsely laid out in relation to one another such that the face of the board largely remains unfilled by them.")). RPI's analyses for the '235 Patent fares no better, consisting of two sentences for each accused design. (*Id*. at 22-23.)[9] In addition to being incorrect, such cursory analyses does not overcome the fact that the Court must

---

[9] RPI's analysis also improperly relies on the design patent file histories (Op. Br. at 22, 24), which are materials outside of the pleadings. *See Design Ideas, Ltd. v. Target Corp.,* No. 3-20-cv-03231, 2021 WL 6058698, at *2 (C.D. Ill., Dec. 21, 2021) (refusing to consider patent prosecution histories in deciding a motion to dismiss for design patent invalidity).

accept the well-plead infringement allegations in Tangent's FAC as true. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).

Even if it were appropriate to make a substantial similarity determination at this early point in the case (it is not), RPI's motion improperly only analyzes the alleged differences in isolation, ignoring black-letter law requiring that "[d]ifferences…be evaluated in the context of the claimed design as a whole, and not in the context of separate elements in isolation." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015). Further, any minor differences that RPI alleges exist do not make it implausible that the designs are substantially similar. "[M]inor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." *See Payless Shoesource, Inc. v. Reebok Int'l Ltd*., 998 F.2d 985, 991 (Fed. Cir. 1993); *Five Star Gourmet*, 2019 WL 1260634, at *3 ("[T]he limited question on a motion to dismiss is whether the claimed design and the accused product share sufficient visual similarity to plausibly allege design-patent infringement.").

Ultimately, the "ordinary observer" test for design patent infringement is ripe with factual issues, making its determination premature at this early stage. RPI's motion to dismiss the design patent infringement counts should be denied.

## V. CONCLUSION

For the foregoing reasons, the Court should deny RPI's motion to dismiss. In the alternative, if the Court deems any of Tangent's pleadings insufficient, Tangent requests leave to supplement its FAC to correct any deficiency.

Dated: July 31, 2023                    Respectfully submitted,

                                        TANGENT TECHNOLOGIES, LLC

                                        By: /s/ James M. Oehler

                                        Michael P. Chu (Il. Bar No. 6210133)
                                        mchu@mwe.com
                                        Amol A. Parikh (Il. Bar No. 6285077)
                                        amparikh@mwe.com
                                        James M. Oehler (Il. Bar No. 6301897)
                                        joehler@mwe.com
                                        MCDERMOTT WILL & EMERY LLP
                                        444 West Lake Street
                                        Chicago, IL  60606-0029
                                        Tel: (312) 372-2000